UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GUILFORD BOYD,<br>      Plaintiff, | : | CIVIL CASE NO.<br>3:24-cv-01385-JCH |
| v. | : | |
| FRANK BISIGNANO[1],<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION<br>      Defendant. | :<br>:<br>: | SEPTEMBER 17, 2025 |

**RULING ON PLAINTIFF'S MOTION FOR ORDER REVERSING THE DECISION OF THE COMMISSIONER OR IN THE ALTERNATIVE MOTION FOR REMAND FOR A HEARING (Doc. No. 17) AND DEFENDANT'S MOTION FOR AN ODER AFFIRMING THE DECISION OF THE ACTING COMMISSIONER (Doc. No. 18)**

**I.      INTRODUCTION**

The plaintiff, Guilford Boyd ("Mr. Boyd"), brings this action under 42 U.S.C. Section 405(g), appealing the final determination of the Commissioner of the Social Security Administration ("the Commissioner") denying Mr. Boyd's application for disability insurance benefits ("DIB") and supplemental security income ("SSI").  See Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing ("Mr. Boyd's Mot.") (Doc. No. 17); Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Rehearing ("Mr. Boyd's Mem.") (Doc. No. 17-1).  Mr. Boyd moves this court to reverse the determination of the Commissioner or, alternatively, remand the case for a hearing.  See Mr. Boyd's Mot.  The Commissioner cross-moves for an order

---

[1] Frank Bisignano is the 18th Commissioner of the Social Security Administration, replacing Martin O'Malley.

1

affirming the decision at issue.  See Defendant's Motion for an Order Affirming the Decision of the Acting Commissioner ("Commissioner's Mot.") (Doc. No. 18); Defendant's Memorandum in Support of Her Motion for an Order Affirming the Commissioner's Decision ("Commissioner's Mem.") (Doc. No. 18-1).

For the reasons that follow, Mr. Boyd's Motion to Reverse or Remand (Doc. No. 17) is granted and the Commissioner's Motion to Affirm (Doc. No. 18) is denied. The case is remanded for further proceedings consistent with this Ruling.

## II.   BACKGROUND

On January 31, 2022, Mr. Boyd filed both a Title II application for a period of disability and DIB and a Title XVI application for SSI.  Administrative Record ("AR") (Doc. No. 12-2) at 21.  In both applications, Mr. Boyd alleged disability beginning on June 21, 2020.  Id.  Mr. Boyd's claims were denied on April 28, 2022, and then again upon reconsideration on August 4, 2022.  Id.  Thereafter, Mr. Boyd filed a written request for a hearing, which was held virtually on June 23, 2023, before Administrative Law Judge ("ALJ") Matthew Kuperstein.  Id.  On November 9, 2023 the ALJ held "the claimant is not disabled," for purposes of both his DIB and SSI applications.  Id. at 30.  Mr. Boyd requested a review of the ALJ decision by the Appeals Council, which was denied on June 26, 2024.  Id. at 1.  Mr. Boyd then filed an appeal with this court.

The court assumes the parties are familiar with the Administrative Record and adopts the undisputed, but supported, facts as stated in Mr. Boyd's Statement of Facts and adopted by the Commissioner.  See Mr. Boyd's Mem. at 2-19; Commissioner's Mem. at 2.

**III.    STANDARD**

The ALJ follows a five-step evaluation to determine whether a claimant is disabled within the meaning of the Social Security Act.  At the first step, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Commissioner proceeds to the second step and considers whether the claimant has a "severe impairment" which limits his mental or physical ability to do basic work activities.  If the claimant has a "severe impairment," the Commissioner proceeds to step three and asks whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the Regulations.  See 20 C.F.R. § 416.920(a)(4).  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider that claimant disabled, without considering vocational factors such as age, education, and work experience.  Id.

If the impairment is not "listed" in the Regulations, the Commissioner proceeds to step four and asks whether, despite the claimant's severe impairment, he has the Residual Functional Capacity ("RFC") to perform past work.  At step five, the Commissioner determines whether there is other work the claimant could perform.  Id.  To be considered disabled, an individual's impairment must be "of such severity that [s]he is not only unable to do [her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The Commissioner bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps.  See McIntyre v. Colvin 758 F.3d 146, 150 (2d Cir. 2014).

Under section 405(g) of title 42 of the U.S. Code, the district court may not review de novo an ALJ's Decision as to whether the claimant was disabled. See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). The court's review of the Commissioner's Decision "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (citation omitted); see also 42 U.S.C. § 405(g). "Substantial evidence" requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive, and the court will not substitute its judgment in this regard for that of the Commissioner. 42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

**IV.   DISCUSSION**

Mr. Boyd argues that the ALJ erred in two primary respects. First, he contends that the ALJ erred in relying exclusively on the opinions of non-examining state agency doctors, opinions that Mr. Boyd asserts were "aged." Mr. Boyd's Mem. at 21-22. Second, Mr. Boyd argues that the ALJ erred in dismissing additional opinion evidence proffered by Krista Nolan, MSPT. Id. at 23-24. Mr. Boyd asserts that these two errors resulted in an incorrect Residual Functional Capacity ("RFC") determination. Id. at 24-26. The Commissioner opposes both these arguments and asks this court to affirm the decision of the Commissioner. See Commissioner's Mem. The court first turns to the issue of the non-examining state agency doctors.

A.  RFC Determination & State Agency Opinions

In formulating his RFC determination, the ALJ relied on, inter alia, treatment notes, the RFC analysis of the State Agency doctors, Dr. Joseph Connolly and Dr. Richard Papantonio, and Mr. Boyd's own statements about his daily activities.  For example, in finding that the medical record was not entirely consistent with Mr. Boyd's allegations of disabling impairment, the ALJ pointed to x-ray imaging taken in 2020 and 2022 of Mr. Boyd's lumbar and cervical spine, images which did not indicate significant degenerative changes and accompanying, consistent treatment notes.  See, e.g., AR at 27, ALJ Exhibits at AR 416, 821, 966.  The ALJ also considered Mr. Boyd's own statements as to his daily activities as reflected in the record.  The ALJ's Opinion notes that, while Mr. Boyd "alleged rarely leaving the home due to symptoms" in the hearing, his treatment record reflects Mr. Boyd's regular activities which include going to the casino and spending time with his family.  Id. at 28.[2]

Notably, however, the ALJ did not rely on an RFC analysis by a treating or examining physician.  The ALJ only considered Dr. Connolly's and Dr. Papantino's RFC opinions, which assessed Mr. Boyd's capacity, based on a review of medical records, as consistent with an RFC of medium exertion.  Id. at 78-84; 95-102.  Taken together with the other evidence the ALJ considered, the ALJ found Mr. Boyd had "the residual functional capacity to perform medium work," with certain exceptions.  Id. at 26.

In challenging the RFC determination, Mr. Boyd asserts that the ALJ relied exclusively on the aged opinions of non-examining State Agency doctors.  Though the

---

[2] Mr. Boyd's testimony occurred on June 23, 2023.  See AR at 36-75.  The notes cited by the ALR concerning "regular activities" are dated around May 2022.  See, e.g., AR at 801 (Physical therapy evaluation notes indicating Mr. Boyd enjoys going to the casino and spending time with extended family, though notes back pain limiting his participation).

5

court is not necessarily convinced as to the staleness of the State Agency opinions,[3] the court finds that the ALJ erred in not further developing the record with examining or treating medical sources as to Mr. Boyd's RFC.  Stated more plainly, the ALJ did not point to any RFC analysis written by someone who actually <u>examined</u> Mr. Boyd.  Where an ALJ "makes an RFC determination in the absence of supporting expert medical opinion," the ALJ "has improperly substituted his own opinion for that of a physician, and has committed legal error."  <u>Staggers v. Colvin</u>, No. 3:14-CV-717 JCH, 2015 WL 4751123, at *2 (D. Conn. Aug. 11, 2015) (quoting <u>Hilsdorf v. Comm'r of Soc. Sec.</u>, 724 F.Supp.2d 330, 347 (E.D.N.Y.2010)).  "Indeed, consistent with this principle, courts have held that, in the absence of any RFC assessments from treating or examining physicians, an ALJ has an affirmative duty to develop the record by obtaining such assessments."  <u>Id</u>. at *3.  This is especially important here where the only RFC assessments available in the record are from non-examining doctors which predate treatment notes indicating a deterioration in Mr. Boyd's condition.

---

[3] Given that the court's primary concern is with whether the RFC determination includes a medical opinion from a physician who has examined and assessed Mr. Boyd, the court declines to opine at great length as to the staleness of the State Agency doctors' opinions.

However, the court notes that the more recent of the two opinions, Dr. Papantonio's RFC opinion, is from July 2022.  This opinion necessarily excludes later records indicating Mr. Boyd's condition had potentially deteriorated.  See, e.g., Progress notes from the Yale Spine Center dated August 2022 indicating "intermittent 5-6/10 nonradiating axial neck pain" and "persistent low back/buttock axial pain," (AR at 825); Krista Nolan's opinion dated September 2022 indicating Mr. Boyd remains in a lot of pain and feels as though he cannot drive for long or stand more than 10 minutes (AR at 1075); Jane Silva's physical therapy assessment dated October 2022 indicating Mr. Boyd "hasn't gotten much pain relief since starting PT," (AR at 1140); Yale Spine Center procedure visit notes from January 2023 indicating a visit diagnosis of "myofascial muscle pain." (AR at 920).  The hearing was then held in June 2023.

The court struggles to agree with the ALJ's determination that Dr. Papantonio's RFC assessment is "generally consistent with the medical treatment notes submitted into the medical record as a whole since they were made."  AR at 29.  It is not clear to the court that Dr. Papantonio's assessment is consistent with the later record when Dr. Papantonio does not consider these later records reflecting a downturn in Mr. Boyd's condition.

The Commissioner argues that the ALJ need not rely on a medical opinion in determining Mr. Boyd's RFC. See generally, Commissioner's Mem at 5-7. The Commissioner cites to the phrase "and other evidence in your case" in 20 CFR § 404.1520(e) as support for the proposition that the ALJ is not cabined strictly to medical opinion evidence when rendering an RFC. Id. at 5. However, this argument falls short: that the ALJ is not restricted to medical opinion evidence and may consider, e.g., activities of daily living, does not mean that the ALJ can render a finding without medical opinion evidence. Rather, the ALJ can consider nonmedical evidence in tandem with medical opinion evidence. See, supra, Staggers, 2015 WL 4751123, at *2.

Furthermore, the Commissioner posits that the Second Circuit has previously found RFC determinations to be supported by substantial evidence where an ALJ accorded little weight to the only medical opinions in the record. See Commissioner's Mem. at 6 (citing Schillo v. Kijakazi, 31 F.4th 64 (2d Cir. 2022)). This argument too misses the mark. In Schillo, the Second Circuit found, that because "the ALJ accorded the treating physicians' opinions lesser and not no weight, she still considered their conclusions to assess Schillo's RFC." 31 F.4th at 78. Here, the issue is not that the ALJ did not find treating or examining physician evidence persuasive in his RFC determination: it is that he did not consider it at all because no such evidence is in the record.

Its absence required the ALJ develop that portion of the record. Indeed, "an ALJ has an affirmative duty to develop the record by obtaining such assessments." Staggers, 2015 WL 4751123 at *3; see also Prince v. Berryhill, 304 F. Supp. 3d 281, 287 (D. Conn. 2018) (stating that ALJs have an affirmative obligation to develop the

7

record adequately) (citing Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999)); see also Felder v. Astrue, 2012 WL 3993594 at *11 (E.D.N.Y. Sept. 11, 2012) (holding that there is an affirmative duty to request an RFC assessment from a plaintiff's treating sources even where there is a complete medical history); Marshall v. Colvin, 2013 WL 5878112 at *9 (W.D.N.Y. Oct. 30, 2013) (holding that where a treating physician has not assessed a claimant's RFC, the ALJ's duty to develop the record requires he sua sponte request a treating physician's assessment of the claimant's functional capacity); Aceto v. Commr. of Soc. Sec., 2012 WL 5876640 at *16 (N.D.N.Y. Nov. 20, 2012) (finding that since the ALJ only had treatment records and consultative reports to review, he had an affirmative duty to develop the record and request the claimant's treating physicians assess her RFC).

The court concludes that the ALJ erred in not requesting RFC assessments from any treating or examining physician. The case is remanded so that the ALJ can obtain such an assessment.

    B. Krista Nolan, MSPT Opinion

Because the court finds the ALJ erred in failing to develop the record as to an RFC assessment from an examining or treating physician, the court need not reach Mr. Boyd's challenge as to the ALJ's dismissal of opinion evidence offered by Ms. Krista Nolan, MSPT. The court does acknowledge, however, that an ALJ enjoys deference in credibility determinations when assessing the supportability and consistency of medical opinion evidence. John S. v. King, No. 3:23-CV-1476 (VAB), 2025 WL 426100, at *5-6 (D. Conn. Feb. 7, 2025).

## V.     CONCLUSION

The court finds that the ALJ's determination was not supported by substantial evidence in the record.  For that reason, the SSA's denial of Mr. Boyd's application for DIB and SSI is remanded for further proceedings consistent with this Ruling.  For the reasons stated herein, Mr. Boyd's Motion to Reverse or Remand (Doc. No. 17) is granted and the Commissioner's Motion to Affirm (Doc. No. 18) is denied.

The Clerk is instructed to enter judgment and close this case.  In addition, the Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the undersigned.

**SO ORDERED.**

Dated at New Haven, Connecticut, on this 17th day of September 2025.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge